**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GARY JONATAN DE LEON,<br><br>        Petitioner,<br><br>        v.<br><br>PATRICIA HYDE, Boston Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations ("ICE/ERO");<br><br>TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement ("ICE");<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS");<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and<br><br>PAMELA BONDI, Attorney General of the United States,<br><br>        Respondents. | Civil Action No. 25-12490-WGY |

**RESPONDENTS' OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241 AND RESPONSE TO NOTICE**

      The Court should deny Petitioner Gary Jonatan De Leon's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). [Doc. No. 1]. Petitioner is lawfully detained as an applicant for admission under 8 U.S.C. § 1225(b) and is subject to mandatory detention.

      As ordered by the Court [Doc. No. 7], in response to Petitioner's allegations set forth in the Notice of Apparent Government Violation of Standing Order ("Notice"), Respondents deny

that Petitioner was moved in violation of the Court's Standing Order requiring 72 hours' advance notice before moving Petitioner from the District of Massachusetts.

## BACKGROUND

Petitioner "is a citizen of Guatemala who entered the United States without inspection in or about 2005." [Doc. No. 1 ¶ 1]. *See also* Declaration of Assistant Field Office Director Keith Chan ("Chan Decl.") ¶ 6. He is currently housed at the Otay Mesa Detention Center in San Diego, California, where a Notice to Appear is in the process of, or has been, filed with the Immigration Court. *Id*. ¶¶ 5, 12.

On September 8, 2025, United States Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") officers arrested and detained Petitioner in Waltham, Massachusetts. [Chan Decl. ¶ 7; Doc. No. 1 ¶ 2]. Petitioner was issued a Notice to Appear and placed into removal proceedings charging him as removable from the United States pursuant to 8 U.S.C. §1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). *Id*. That same day, Petitioner was transferred to the Batavia Detention Center in New York due to bed space constraints. [Chan Decl. ¶ 8]. He was placed on a flight that departed Beddford, Massachusetts on September 8, 2025, at approximately 6:20 p.m. EST, and arrived in Buffalo, New York at approximately 7:30 p.m. EST. *Id*.

On September 9, 2025, after Petitioner had been transferred from the District of Massachusetts, ICE ERO received notice of the Petition and service order issue by this Court. *Id*. ¶ 9.

2

**LEGAL STANDARD**

Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions. It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

**ARGUMENT**

Petitioner principally seeks an order from this Court directing Respondents to immediately release Petitioner from ICE detention or, in the alternative, order Respondents to provide him with a bond hearing. [Doc. No. 1 at 10-11]. Petitioner argues that he is not subject to detention pursuant to 8 U.S.C. § 1225(b) because he has resided (albeit unlawfully) in the United States since 2005 and therefore is outside the two-year statutory framework subjecting him to mandatory detention. [Doc. No. 1 at ¶¶ 3, 25, 29, 35]. Petitioner contends that his detention violates his due process rights guaranteed under the Fifth Amendment to the United States Constitution, is not authorized by the INA, constitutes an illegal retroactive application of the expedited removal designation to his unlawful entry into the United States," and violates the Administrative Procedures Act. *See id.* ¶¶ 28-52.

However, Petitioner is being lawfully detained as an applicant for admission pursuant to 8 U.S.C. § 1225(b)(2)(A). This is because as an alien who entered without inspection or parole, Petitioner was and remains an applicant for admission who is treated, for constitutional purposes, as if he were stopped at the border. *See* 8 U.S.C. § 1101(a)(13)(A) (defining "admission"); *DHS v. Thuraissigiam*, 591 U.S. 103, 109 (2020); *Matter of Lemus*, 25 I&N Dec. 734, 743 (B.I.A. 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional

sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . .").  As such, Petitioner is subject to mandatory detention pending his removal proceedings, and he is not entitled to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

### A. Petitioner is Lawfully Detained as an Applicant for Admission Under 8 U.S.C. § 1225(b)(2)(A)

As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' . . . and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry[]'" into the United States. *Thuraissigiam*, 591 U.S. at 140 (citations omitted); *accord Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (B.I.A. 2025) ("An alien, like the respondent, 'who tries to enter the country illegally is treated as an applicant for admission.'" (quoting *Thuraissigiam*, 591 U.S. at 140)). Stated another way, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission. An alien . . . who is caught trying to enter at some other spot is treated the same way." *Thuraissigiam*, 591 U.S. at 108; *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. Sept. 5, 2025) (explaining that Congress intended that those "who entered the United States without inspection" would not receive "more procedural and substantive rights than those who presented themselves to authorities for inspection").

Section 1225 defines an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival. . ." 8 U.S.C. § 1225(a)(1). The term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Accordingly, the BIA has held that "[a]pplicants for admission remain such unless an immigration officer determines that they are 'clearly and beyond a doubt entitled to be

4

admitted.'" *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). In other words, noncitizens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id*. This is so, the BIA explained, even if the individual resides "in the United States for a lengthy period of time following entry without inspection" because doing so "does not constitute an 'admission.'" *Id*. (quoting 8 U.S.C. § 1101(a)(13)(A); *see also id*. at 221.

Here, Petitioner is an "applicant for admission" as defined by the statute. 8 U.S.C. § 1225(a)(1): he is present in the United States, and does not assert (nor can he assert) that he has been lawfully admitted to the United States. Thus, as an "applicant for admission" Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). *See Pena v. Hyde*, No. 25-11983, 2025 WL 2108913, at *1–2 (D. Mass. July 28, 2025) (holding that § 1225(b)(2)(A) authorized petitioner's detention as an "applicant for admission" where ICE arrested petitioner 20 years after he "entered the country illegally"); *Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at *1–3 (W.D. Wash. Aug. 8, 2023) (holding that an individual apprehended near the border and later processed under § 1226 "appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted'" (quoting 8 U.S.C. § 1225(a)(1)); *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 220 (holding that noncitizens "who are present in the United States without admission are applicants for admission" who "must be detained for the duration of their removal proceedings").[1]

---

[1] *But see, e.g.*, *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (concluding that "the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States"); *Martinez v. Hyde*, No. 25-cv-11613-BEM, __ F. Supp. 3d __, 2025 WL 2084238 (D. Mass. July 24, 2025), and *Romero v. Hyde*, No. 25-cv-11631-BEM, __ F. Supp. 3d __, 2025 WL 2403827 (D. Mass. August 19, 2025) (same).

Petitioner's custody pursuant to 8 U.S.C. § 1225(b)(2)(A) subjects him to mandatory detention. *See* 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). In declining to find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention" nor "says anything whatsoever about bond hearings." *Id.*; *see also id.* at 302 (explaining that § 1225 authorizes detention "throughout the completion of applicable proceedings and not just until the moment those proceedings begin"). Thus, Petitioner is not entitled to a bond hearing as he requests.

To the extent this Court finds that 8 U.S.C. §§ 1225 and 1226 are in conflict, the "specific provision" governs over the "general one." *See Edmond v. United States*, 520 U.S. 651, 657 (1997); *see Rodriguez v. Bostock*, No. 25-cv-05240, 2025 WL 1193850, at *13 (W.D. Wash. Apr. 24, 2025) (explaining that a "plain reading" of § 1225 "conflicts" with a "plain reading" of § 1226). Section 1226 is the "default" detention authority that "generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288. By contrast, § 1225 is narrower and applies only to "applicants for admission"; that is, individuals present in the United States who have not been admitted. 8 U.S.C. § 1225. Thus, the specific detention authority under § 1225 governs over the general authority found at § 1226(a). As such, Petitioner's detention is both mandatory and lawful.

**B.     Petitioner's Detention is Constitutional Because Applicants for Admission Have Limited Due Process Rights**

Petitioner's claim that his detention violates the Fifth Amendment's due process clause is without merit because the Supreme Court has held that applicants for admission are entitled only to the protections set forth by statute and that "the Due Process Clause provides nothing more…"

6

*Thuraissigiam*, 591 U.S. at 140; *see also Pena*, 2025 WL 2108913 at *2 (holding that an applicant for admission's detention "comport[ed] with due process" because his detention was "both authorized and required by" § 1225(b)(2)(A)).

Applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. U.S. ex. rel. Mezei*, 345 U.S. 206, 212 (1953) (citation omitted). In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Id*. at 207, 215. And even though he had resided in the United States previously, he had since been "permanently excluded from the United States on security grounds." *Id.* at 207. The Supreme Court held that Mr. Mezei's detention did not "deprive[] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139–40. "When an alien arrives at

7

a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country. . ..." *Id*. at 139. Moreover, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *See id.* at 139–40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 140.

The First Circuit also has held that detention of an individual seeking admission to the United States does not violate due process. *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In *Amanullah*, the First Circuit explained that "the detention of the appellants [was] entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* There, the appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

District courts around the country routinely also have found no due process violation in the detention of individuals subject to 8 U.S.C. § 1225(b). For example, in *Poonjani v. Shanahan*, the court held that *Mezei* "is directly on point and controls this case" and "because the immigration statutes at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not

8

require one here." 319 F. Supp. 3d 644, 647–49 (S.D.N.Y. 2018) (citing *Mezei*, 345 U.S. at 212); *see also, e.g.*, *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (applying *Mezei* to hold that an individual's "detention [did] not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process"); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights. Because [p]etitioner has no statutory right to release or a bond hearing. . . she has no due-process right to the relief requested."); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since § 1225(b) does not provide for such hearing). Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his constitutional right to due process does not extend beyond the rights provided by statute.").

To be sure, some district courts have concluded that further analysis is warranted to determine whether an applicant for admission is entitled to a bond hearing under the Constitution once § 1225's mandatory detention becomes "unreasonably prolonged." *See, e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable" (citation omitted)). Here, however, ICE detained Petitioner only recently—on September 8, 2025. In short, therefore, Petitioner's detention is authorized by 8 U.S.C. § 1225(b) and does not violate the Constitution. *Cf. Demore v. Kim*, 538 U.S. 510, 523

9

(2003) ("[The] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.").

### C. Jurisdictional Issues

Section 2242 of Title 28 of the U.S. Code provides that a habeas petitioner filing a § 2241 petition "shall allege the facts concerning the application's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known." A writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243.

Thus, as a general rule, a petitioner must file their habeas petition in the district in which they are confined and must name as a respondent the petitioner's immediate custodian—typically "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 442-47 (2004); *see also Vazquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 34 (D. Mass. 2025). Failure to do so deprives the Court of jurisdiction. *See Vazquez*, 233 F.3d at 690 ("Jurisdiction over the custodian is paramount because '[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.'") (alteration in original) (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494-95 (1973)). This immediate custodian/place of confinement rule is intended to "prevent [] forum shopping by habeas petitioners," and to avert the "inconvenient [and] potentially embarrassing possibility that every judge anywhere could issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat." *Padilla*, 542 U.S. at 442 (cleaned up; citation omitted).

Here, Petitioner was in Massachusetts at the time the Petition was filed, although he was placed on a flight that departed approximately 28 minutes after its filing. His Petition names the wrong Respondents (government supervisory officials) and fails to name the warden of the facility in which he was detained in Massachusetts (however briefly), or anywhere else. Thus, Petitioner has failed to file his habeas petition in the district in which he is confined, he has failed to name as a respondent the petitioner's immediate custodian, and his failure to do so deprives the Court of jurisdiction. *See Padilla*, 542 U.S. at 435, 442-474; *Vazquez*, 233 F.3d at 696; *Ozturk*, 777 F. Supp. at 34. And his failure to do so deprives the Court of jurisdiction. *See Vazquez*, 233 F.3d at 690.

Respondents recognize and acknowledge the district court's decision in *Ozturk*, 777 F. Supp. 3d 26, analyzing exceptions to the place-of-confinement rule. Further, in *Ex Parte Endo*, 323 U.S. 283 (1944), the Supreme Court held that the government's transfer of Endo to another district *after* Endo had properly named her immediate custodian in Northern District of California in her petition did not divest the California court of its jurisdiction. *Id.* at 304-06. But here, Petitioner failed to name his immediate custodian in Massachusetts in the first instance. And no exception saves his failure. Petitioner was not detained outside of the territorial jurisdiction of the United States, nor was he "held in an undisclosed location by an unknown custodian." *Ozturk* 777 F. Supp. 3d at 36 (citing *Padilla*, 542 U.S. at 443-50 & n. 18). Rather, Petitioner was arrested in Massachusetts and, due to operational needs and bed space constraints, transferred to New York. [Chan Decl. ¶ 8]. And as demonstrated by the Notice [Doc. No. 5], Petitioner's location and his immediate custodian were known to him and his counsel. Petitioner does not allege—nor can he allege—that his failure to name his immediate custodian is excused by "an indication that the Government's purpose in removing a prisoner [was] to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with

11

respect to the identity of the custodian and the place of detention." *Ozturk* 777 F. Supp. 3d at 37 (citing *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring)). Such circumstances simply do not exist here.

On the date of his arrest in Massachusetts, Petitioner was transferred to the Batavia Detention Center in New York due to operational needs and bed space constraints. There is nothing nefarious or improper in Respondents transferring an individual in immigration detention for operational needs. In fact, this authority and discretion was expressly left to Respondents' discretion by Congress. *See* 8 U.S.C. § 1231(g); *see also Calla-Collado v. Attorney General of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("[A]s part of DHS, ICE necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another.") (internal quotation marks and citation omitted).

Petitioner has failed to comply with the jurisdictional mandates required for a habeas petition, and no exceptions apply. Therefore, the Court lacks jurisdiction over the Petition, and it should be dismissed. Alternatively, Respondents to not object to transfer of the Petition to California, where Petitioner is presently detained.

### D.    Response to Notice

Finally, in response to Petitioner's Notice [Doc. No. 5], Respondents deny the allegations that Petitioner was moved in "apparent" violation of the Court's Standing Order requiring 72 hours' notice before moving Petitioner outside the District of Massachusetts. *Id*.

As previously noted, Petitioner was arrested on September 8, 2025. [Chan Decl. ¶ 7]. That same day, he was transferred to the Batavia Detention Center in New York due to bed space constraints. *Id*. ¶ 8. He was placed on a flight that departed Bedford, Massachusetts on September

8, 2025, at approximately 6:20 p.m. *Id*. The Petition was filed on September 8, 2025, at 5:52 p.m., less than a half hour before his flight departed. And ICE ERO was notified of the Petition and the Court's Order on September 9, 2025. *Id*. ¶ 9. At the time ICE ERO was notified of the Petition and Order, Petitioner already had been transferred from the District of Massachusetts. *Id*.

Thus, Respondents did not violate the Court's Order.

## **CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court deny the Petition or, in the alternative, transfer it to the District of California.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  */s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3369
Dated: September 17, 2025          Eve.Piemonte@usdoj.gov